# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL J. ALVAREZ, | ) 1:09-CV-00334-GSA |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## BACKGROUND

Plaintiff Michael J. Alvarez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

//

//

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 8 & 10.

**FACTS AND PRIOR PROCEEDINGS**[2]

Plaintiff filed his application on or about August 25, 2005, alleging disability beginning August 25, 2004. AR 12, 18-19. His application was denied initially on December 9, 2005 (AR 20-24), and upon reconsideration on April 24, 2006. AR 28-32. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 33. ALJ Eve Godfrey held a hearing on July 7, 2008 (AR 350-379), and issued an order denying benefits on July 25, 2008. AR 12-16. Plaintiff requested a review of the hearing and the Appeals Council denied review on December 31, 2008. AR 3-8.

**Hearing Testimony**

ALJ Godfrey held a hearing on July 7, 2008, in Bakersfield, California. Plaintiff appeared and testified. He was represented by representative Steven Whitfield. Medical Expert Dr. Steiner and Vocational expert ("VE") Mark Remas also testified. AR 352-379.

Plaintiff was born on July 26, 1977, and was twenty-nine years old at the time of the hearing. AR 354. Plaintiff is five feet nine inches tall and weighs 174 pounds. AR 365. Previously, Plaintiff weighed 210 pounds, however, he lost weight over the past three years because of his medical condition. AR 365. He currently eats only one meal per day. AR 365.

Plaintiff has lived with his mother for the last four months. AR 355. Prior to that time, he lived with his girlfriend and three children, ages three, six, and nine. AR 356. Plaintiff's girlfriend works for L'Oreal, however, both Plaintiff and his girlfriend collect public assistance. AR 356. One of Plaintiff's children also receives Social Security payments because he is disabled. AR 357. All three children live up the street and Plaintiff sees them everyday when his mother brings them down to visit. AR 364. During their visits, Plaintiff talks with his children and watches cartoons with them. AR 364.

During the day, Plaintiff sleeps "a lot" because he vomits and gets very bad migraine headaches when he stands for more than two hours. AR 357. Plaintiff receives potassium

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

supplements and pain shots from the emergency room when this occurs. AR 357. Plaintiff does not receive potassium supplements on a regular basis to treat this condition. AR 357.

Initially, Plaintiff testified that he vomits once or twice a week, however, he later clarified that he vomits everyday. AR 364. His nausea is not correlated to his eating habits. AR 365. Although Plaintiff has been to the emergency room recently on several occasions, he has not been hospitalized since August 2004. At that time, Plaintiff had his appendix removed. AR 360-361. The appendectomy did not improve his condition. *Id*.

Plaintiff is being treated by his family physician, Dr. Tarn. AR 360. Plaintiff takes Vicodin, Compazene, Dilodid, and Topmax to treat his pain. AR 360. Plaintiff also takes over-the-counter medications such as Maalox to reduce his symptoms. AR 366. The side effects of these medications cause Plaintiff to lay on the couch all day because he is tired. AR 366. He is only able to sit up about two hours per day during which time he watches television. AR 358. Plaintiff usually takes several one hour naps throughout the day because he is only able to sleep two to three hours a night. AR 363. In addition to making him tired, the medications also cause him to have restless legs. AR 366.

Dr. Feldman, a psychiatrist, also sees Plaintiff one time per week. Plaintiff has seen Dr. Feldman for approximately one and a half months for counseling and for medication. AR 362. Plaintiff is currently taking 40 milligrams of Celexa and 400 milligrams of Seroguel. AR 360. Dr. Feldman altered Plaintiff's medication about two weeks ago because the medicine was not effective. AR 363. Plaintiff was initially prescribed Prozac but Celexa was substituted because the Prozac was not effective. AR 362. Dr. Feldman also increased Plaintiff's dosage of Seroguel. AR 362.

Plaintiff last worked in 1999 as a cabinet worker. His also has worked as a farm worker and short order cook at Rally's. AR 100, 355. He believes he cannot work because he would have to miss work everyday due to his sickness which includes dizziness and passing out. AR 366.

Dr. Sheldon Steiner, a board-certified internist and medical expert, also questioned Plaintiff and testified at the hearing. In response to Dr. Steiner's questions, Plaintiff indicated that

his blood pressure has been checked both when he is sitting and standing, but that it does not change when he stands up. Plaintiff further indicated that he gets headaches after vomiting because of all of the pressure in his head. AR 367-368. He does not get a headache first and then vomit. AR 367-368.

Dr. Steiner indicated that Plaintiff does not meet one of the listing levels and that there is nothing in the record that would preclude Plaintiff from working. AR 369-370. However, he recommended an endocrinology evaluation because Plaintiff may be suffering from porphyria, a disease which causes abdominal pain and vomiting, or from gluten which is an intolerance to wheat. AR 368. Dr. Steiner also recommended that Plaintiff be evaluated for an adrenal tumor. AR 368. Dr. Steiner stated that Vicodin and Dilodid were not appropriate treatments for abdominal pain or for headaches. AR 369. Dr. Steiner further noted that Plaintiff's symptoms may also be caused by Plaintiff's marijuana consumption. AR 369-370.

VE Remas testified that Plaintiff's previous work as a farm worker is "medium work, unskilled, SVP II." AR 371. Plaintiff's past work as a cabinet assembler and short order cook are both "light, semi-skilled, SVP III." AR 372. The VE was then asked to consider a hypothetical in which Plaintiff was limited to sedentary work that required Plaintiff to change positions every ninety minutes. *Id*. The VE indicated Plaintiff would be unable to perform his past work. *Id*. However, VE Remas indicated that Plaintiff would be able to perform work as a lens inserter, final assembler, table worker, and charge account clerk of which there are 57,000, 18,000, 16,000 and 38,300 jobs available nationally, respectively. AR 372-373.

When asked to consider a second hypothetical in which Plaintiff would be required to perform light unskilled work that required a break every ninety minutes, the VE indicated that Plaintiff would be able to perform jobs including a small parts assembler, packing line worker, and a scrap separator of which there are 500, 900, and 500 jobs in the region and 350,000, 200,000, and 145,000 nationally respectively. AR 373-374.

When asked to consider a third hypothetical in which Plaintiff would be required to perform sedentary to light work requiring easy access to a bathroom and one unscheduled ten minute break a day at a random time, the VE testified that Plaintiff could still perform the job of

4

lens inserter, table assembler, order clerk, table worker, however, a packing line worker would be excluded.  AR 374.

When asked to consider a fourth hypothetical in which Plaintiff would be required to perform sedentary to light work which required an unscheduled thirty minute break, the VE indicated there would be no jobs available.

Finally, when asked by Plaintiff's representative to consider a fifth hypothetical in which a person could only sit for one to two hours a day, stand for two hours at a time, would be required to lay down for one to two hours a day, and be unable to maintain concentration for more than fifteen to twenty minutes, the VE testified that there would be no jobs available.  AR 374-378.

After the VE testified, the following dialogue occurred between Plaintiff's representative and the ALJ :

ALJ :  Okay.  Anything else, Mr. Whitfied ?

Rep :  Mr. Alvarez's mother is present, if you like for her to testify.  She can only corroborate what his daily activities is [sic], but I think it would be good to have her, if you think it's relevant because it doesn't [sic], that's the only testimony that she cannot add is describe this limitations and daily activities [sic].  But beyond that she couldn't really add anything else to the evidence at this hearing.

ALJ:  All right.  Well, she can't really add anything to it ?

Rep.  Yes.

ALJ:  I don't really think we need it, do you ?

Rep:  No.

ALJ:  All right.

AR 378-379.  At the conclusion of this exchange, the hearing was closed and Plaintiff's mother did not testify.

**Medical Record**

The entire medical record was reviewed by the Court.  Plaintiff was treated at Catholic Healthcare West, Mercy Hospital in Bakersfield, California, and San Joaquin Community Hospital in Bakersfield, California, in their emergency rooms numerous times between August

2004 and February 2006.  The summaries below reflect the treatments received at the emergency room at each of the facilities.  Plaintiff did not provide any medical records from his treating physician or any consultative examiners.

### *San Joaquin Community Hospital*

Plaintiff was seen on August 23, 2004, for abdominal pain, nausea, and vomiting.  AR 320-322.  Examination of the chest revealed clear lungs and normal heart size.  AR 327.  An acute abdomen series was performed and was negative.  AR 327.  Plaintiff was discharged and prescribed Aciphex and Ambien.  AR 330.  He was told to follow-up with this primary care physician within two to three days, or to return to the emergency room if symptoms worsened.  AR 332.  Plaintiff admitted to smoking marijuana during the examination.  AR 322.

Plaintiff was treated on October 20, 2004, for vomiting and lower abdominal cramping.  AR 310-320.  Lab evaluations and intravenous treatment were ordered but Plaintiff refused treatment and left the hospital against medical advice.  AR 313.   Plaintiff was in stable condition at the time that he left the hospital. AR 313.   Plaintiff admitted to abusing marijuana at that time.  AR 312.

Plaintiff arrived at the emergency room via an ambulance on October 6, 2005.  AR 300.  He was complaining of abdominal pain.  AR 298-309.  Examinations revealed no abnormalities.  AR 301-302.  Plaintiff received hydration and reported improvement.  AR 301.  He was prescribed Cipro and Phenergan.  *Id*.  It was recommended that Plaintiff follow-up with his GI physician in the morning.  AR 309.

Plaintiff returned to the emergency room for general malaise two days later on October 8, 2005.  AR 284-296.  Plaintiff was given Phenergan, Dilaudid, and a potassium replacement.  AR 285.  He reported feeling substantially better after treatment.  *Id.*   Plaintiff was advised to terminate the Cipro as this may be exacerbating his symptoms.  AR 297.  Plaintiff was also told to make an appointment with his primary care physician within forty-eight hours, or to return to the hospital if he did not have a primary care physician.  AR 285, 297.  He was diagnosed with vomiting, viral syndrome, and marijuana abuse.  *Id*.  He was advised of the risks of drug use abuse and it was recommended that he seek counseling.  AR 284-285, 296.

Plaintiff was seen at the emergency room for vomiting and diarrhea on October 10, 2005. AR 274-275.  He was given Phenergan and Morphine and was discharged after being observed for approximately seven hours.  AR 275-279.

Plaintiff arrived at the emergency room via an ambulance on November 15, 2005, for complaints of abdominal pain, nausea and vomiting.  AR 263.  It was recommended that Plaintiff remain in the hospital for a more extensive evaluation, however, Plaintiff refused because he needed to be home to address family issues.  AR 264-270.  Plaintiff was discharged against medical advice that same day.  AR 264, 270.

Plaintiff was examined on February 26, 2006, for vomiting, diarrhea and abdominal pain. AR 251.  Plaintiff tested positive for marijuana use.  AR 254.  Plaintiff was diagnosed with gastroenteritis and given intravenous treatments that included Phenergan.  AR 252.  Plaintiff was discharged and instructed to return if the pain worsened.  AR 252-260.

*Catholic Healthcare West Mercy Hospital*

Plaintiff was examined in the emergency room and admitted to the hospital on January 4, 2005, for acute abdominal pain, nausea, vomiting, muscle weakness and hypokalemia.  AR 229, 233, 236-240.  An ultrasound of the gallbladder was negative for stones and showed normal common bile ducts.  AR 229.   Plaintiff was diagnosed with hypopotassemia, intestinal infection due to organism, and dehydration.  AR 230.  Plaintiff reported feeling better but requested pain medication.  AR 235.  He was hydrated and discharged on January 5, 2005. AR 229.

Plaintiff was examined on February 27, 2005, based on complaints that his stomach was burning.  AR 228.  Plaintiff reported that he was not vomiting but had pain spreading through his entire abdomen.  AR 228.  Plaintiff was given intravenous therapy and reported that he felt much better.  AR 227.  He no longer experienced nausea or vomiting and was able to sleep.  AR 227.

Plaintiff returned to the emergency room two days later on March 1, 2005, with complaints of abdominal pain.  AR 223.  A CT scan of the abdomen was performed.  AR 219. Lung bases were clear and there was no evidence of pnemoperitoneum.  *Id*.  The liver, spleen, adrenals, pancreas, and kidneys were all normal.  *Id*.  A CT scan of the pelvis also was performed. AR 220.  While the prostate was slightly prominent, no acute findings were noted.  *Id*.  A CT scan

7

of the heart also revealed no acute findings. AR 221-222. Plaintiff was discharged from the hospital that same day. AR 222. The importance of outpatient follow-up was emphasized. AR 227.

Plaintiff was examined on April 11, 2005, for complaints of abdominal pain. AR 205. Plaintiff was hydrated with normal saline, given Phenergan and told to avoid spicy, greasy, or fatty foods. AR 212. He was discharged the same day. *Id*.

Plaintiff returned to the emergency room the next day on April 12, 2005, for recurrent complaints of abdominal pain. AR 206. A CT of his abdomen was completed and revealed no abnormalities in the liver, gallbladder, spleen, pancreas, or kidneys. AR 210. There was no evidence of mass, organomegaly, abscess or adenopathy or appendicitis. AR 211

Plaintiff seen again on May 27, 2005 for abdominal pain and vomiting. AR 192. He was given fluids and admitted for further testing. AR 192, 197. Plaintiff received a colonoscopy and multiple polyps were removed. *Id*. Sigmoid spasm and mild internal hemorrhoids were noted. AR 199. Plaintiff improved and it was recommended that he take Prilosec. AR 205. Plaintiff felt much better and his condition improved. AR 188. Plaintiff was instructed to take Tylenol as needed and continue outpatient treatment. AR 188-189. Plaintiff received a endoscopic polypectomy of the large intestine and an esophagogastroduodenoscopy with closed biopsy. AR 189. Plaintiff was discharged on May 30, 3005. AR 188.

Plaintiff was seen on August 18, 2005, for nausea and vomiting. AR 181. A past medical history for colon polyps and gastroesophageal reflux disease was noted. AR 181. X-rays of the chest revealed no acute findings. AR 184. Plaintiff was diagnosed with abdominal pain, dyspepsia with emesis, and a history of gastroesphagal reflux disease and gastritis. AR 180. Plaintiff was told to follow-up with his physician. AR 177-180.

Plaintiff was examined on January 9, 2006, for complaints of headaches, nausea and vomiting. AR 177. Lab results and a CT scan of Plaintiff's head was normal, although there was a questionable foreign body in the left orbit. *Id*. He was examined again on January 11, 2006, for abdominal pain. AR 176. Acute abdominal series was performed and reviewed. A rectal exam was also completed and was negative. *Id.* Plaintiff received intravenous therapy which included

Phenergan, Morphine, and Reglan. *Id*. Plaintiff was diagnosed with gastritis. AR 175. He was advised to follow-up with his physician, and was discharged. AR 175.

Two days later, on January 13, 2006, Plaintiff returned to the emergency room. AR 137. It was recommended that Plaintiff be admitted to the hospital so that he could be stabilized and additional medical tests could be performed. AR 139, 140-141. Plaintiff was diagnosed with *inter alia*, dehydration, gastritis, persistent vomiting, cannabis abuse. AR 137. An ultra sound of Plaintiff's abdomen revealed no abnormalities with no acute findings. AR 151. Cardiology consultations were unremarkable. AR 144-145-155. X-rays of the chest indicated no acute findings. AR 174.

### *Dr. L. Bobba*

Dr. L. Bobba, M.D., a state agency, non-examining physician reviewed Plaintiff's medical record. She determined that Plaintiff did not have a severe impairment and that the allegations of the severity of Plaintiff's symptoms were not fully supported by the medical record. AR 336.

### **ALJ's Findings**

The ALJ found that Plaintiff has not engaged in substantial gainful activity since August 25, 2005, and has the severe impairment of gastritis. AR 15. Nonetheless, the ALJ determined that the severe impairment did not meet or exceed one of the listed impairments. *Id*.

Based on her review of the medical evidence, the ALJ determined that Plaintiff has the RFC to perform sedentary work except that he must change positions at least once every ninety minutes. *Id*. After considering the Plaintiff's age, education, work experience, and RFC, the ALJ determined there are significant numbers of jobs in the national economy that Plaintiff can perform. *Id*. Accordingly, the ALJ found that Plaintiff was not disabled, as defined in the Social Security Act. *Id.*

### **SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla,"

9

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## **REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since August 25, 2005; (2) has an impairment that is considered "severe" based on the requirements in the Regulations (20 CFR §§ 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) could not

perform his past relevant work; but (5) could perform jobs that exist in significant numbers in the national economy. AR 15.

Here, Plaintiff argues that the ALJ: 1) incorrectly determined Plaintiff's ailments did not meet or medically equal any of the listed impairments; 2) failed to fully develop the record; 3) did not properly consider the vocational examiner's testimony; 4) failed to consider the side effects of his medications; 5) improperly ascribed a negative connotation to Plaintiff's use of medical marijuana; 6) inappropriately assessed Plaintiff's pain testimony; and 7) erroneously prevented Plaintiff's mother from testifying at the hearing.

## DISCUSSION

### A.   *Plaintiff's Impairment at Step Three and the ALJ's Duty to Develop the Record*

Plaintiff argues that the ALJ failed to adequately consider whether his impairments for gastritis and anxiety met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1525 and 404.1526). Specifically, Plaintiff contends that the ALJ failed to order a medical assessment from Plaintiff's treating physician, and did not obtain a medical determination outlining Plaintiff's physical and mental impairments so that the ALJ could properly assess the "combination of effects of both of his impairments." Defendant argues that the ALJ properly determined Plaintiff did not have an impairment that met or medically equaled a listed impairment.

The listings of impairments describe impairments "that are considered severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. § 416.925(a). Most of these impairments are permanent or expected to result in death. *Id.* For all other impairments, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months. *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry. 20 C.F.R. § 416.920(d).

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets *all* of the medical criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* "To "equal" a listed impairment, a claimant must establish

symptoms, signs and laboratory findings that "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1526(a), 416.926(a). Under the law of this circuit, an ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005); *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001) (in distinguishing *Marcia v. Sullivan,* 900 F.2d 172 (9th Cir. 1990), the court determined that the ALJ's failure to consider equivalence was not reversible error because the claimant did not offer any theory, plausible or otherwise, as to how his impairments combined to equal a listed impairment).

Here, the ALJ noted that Plaintiff suffers from gastritis, a severe impairment. AR 15. However, the ALJ also clearly indicated that Plaintiff's impairment did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). *Id*. Although the ALJ did not specifically elaborate on her rationale under the severity impairments heading, she provided a comprehensive recitation of the medical evidence which provided an adequate statement of the foundations on which the ultimate factual conclusions [were] based." *Gonzalez v. Sullivan*, 914 F. 2d 1197, 1201 (9th Cir. 1990) ("The [Commissioner's four page "evaluation of the evidence" is an adequate statement of the "foundations on which the ultimate factual conclusions are based." To require the ALJ to improve their literary skills in this instance would unduly burden the social security disability process.") (citation omitted). AR 14-17.

In this case, all of the medical evidence submitted by Plaintiff indicated that his symptoms were alleviated when he was treated at the emergency room for dehydration. AR 184; 188-189; 210- 212; 219-222; 227-229; 235; 264-270; 284-285; 296-309; 327-330. None of the medical evaluations indicated that Plaintiff was disabled, nor have any of the examining gastroenterologist been able to identify the etiology of Plaintiff's pain. *Id*. In fact, all of the emergency medical reports submitted by Plaintiff revealed normal functioning of all major digestive systems. *Id*.

Other than making a broad assertion that the ALJ failed at this step, Plaintiff has not identified a listed impairment, or offered any theory, plausible or otherwise, as to how his conditions combined to medically equal a listed impairment. Furthermore, while Plaintiff argues that the ALJ failed to consider his anxiety disorder, Plaintiff did not submit any medical or psychological evaluation indicating that he suffers from this condition. Similarly, nowhere in his testimony does Plaintiff specifically indicate that his anxiety is severe enough to prevent him from working. AR 352-379.

In light of the above, the Court is unpersuaded that the ALJ had an obligation to order additional evaluations of any of Plaintiff's conditions. Contrary to Plaintiff's argument, it is *his* duty, *not* the ALJ's duty to prove that he is disabled. 20 C.F.R. § 404.1512(a) (emphasis added). To this end, Plaintiff must bring to the ALJ's attention everything that supports a disability determination, including medical or other evidence relating to the alleged impairment and its affect on his ability to work. *Id.* For his part the ALJ has the responsibility to develop "a complete medical history" and to "make every reasonable effort to help [the plaintiff] get medical reports." 20 C.F.R. § 404.1512(d). If this information fails to provide a sufficient basis for making a disability determination, or the evidence conflicts to the extent that the ALJ cannot reach a conclusion, he may seek additional evidence from other sources. 20 C.F.R. §§ 404.1512(e); 404.1527(c)(3), see also *Mayes v. Massanari*, 262 F.3d 963, 968 (9th Cir.2001).

Here, the ALJ conducted a thorough review of the entire record and thereafter made a disability determination which is supported by substantial evidence. There was no ambiguity in the record. Dr. Steiner reviewed Plaintiff's records and concluded that the impairment does not meet or medically equal any of the listed impairments. AR. 369-370. Similarly, Dr. Bobba came to the same conclusion. AR 336. In fact, based on the information provided, the ALJ could have found that Plaintiff was not disabled at step two, but instead she gave Plaintiff the benefit of the doubt and proceeded through all steps of the sequential evaluation process. AR 15-16. *See*, *Tommasetti v. Astrue*, 533 F. 3d 1035, 1039 (9th Cir. 2008) (the ALJ gave claimant the benefit of the doubt by finding that claimant had an impairment that could cause the symptoms that he

complained of). Under these circumstances, the ALJ had no duty to further develop the record and she appropriately made a finding of "not disabled" at step three.

### B. Credibility

Plaintiff argues that the ALJ failed to properly credit his pain testimony at the hearing. Defendant contends that the ALJ provided valid reasons for rejecting Plaintiff's testimony and the adverse credibility determination is supported by the record.

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

An ALJ can consider many factors when assessing the claimant's credibility. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's reputation for truthfulness, prior inconsistent statements concerning his symptoms, other testimony by the claimant that appears less than candid, unexplained or inadequately explained failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily activities, claimant's work record, or the observations of treating and examining physicians. *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d 625, 638 (2007).

The first step in assessing Plaintiff's subjective complaints is to determine whether Plaintiff's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  Here, the ALJ found that Plaintiff had the severe impairment of gastritis.  AR 15.  However, the ALJ found that given the record, Plaintiff would not experience severe or disabling pain or any other disabling symptoms. This finding satisfied step one of the credibility analysis.  *Smolen*, 80 F.3d at 1281-1282.

Because the ALJ did not find that Plaintiff was malingering, she was required to provide clear and convincing reasons for rejecting Plaintiff's testimony.  *Smolen*, 80 F.3d at 1283-1284; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (as amended); *Tommasetti v. Astrue*, 533 at 1039 (when the ALJ gave the claimant the benefit of the doubt that he had a verifiable impairment, the ALJ was required to provide clear and convincing reasons in support of the adverse credibility determination).   When there is evidence of an underlying medical impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his symptoms solely because they are unsupported by medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991); SSR 96-7.  Moreover, it is not sufficient for the ALJ to make general findings; he must state which testimony is not credible and what evidence in the record leads to that conclusion. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell*, 947 F.2d at 345-346.

The ALJ gave four reasons for rejecting Plaintiff's pain testimony including : 1) Plaintiff's subjective complaints were inconsistent with the medical evidence that revealed no abnormality in Plaintiff's gastrointestinal systems, 2) Plaintiff responded well to short-term conservative treatment in the emergency room, 3) no doctor concluded Plaintiff was unable to work, and 4) Plaintiff smoked marijuana despite his digestive condition.  These were all clear and convincing reasons for rejecting Plaintiff's pain testimony.

First, the ALJ's reliance on the lack objective medical evidence is a valid basis to contradict claimant's subjective symptom testimony. *See, Morgan v. Comm'r of Soc. Sec.*, 169 F. 3d 595, 600 (9th Cir. 1999) (conflict between subjective complaint and objective medical evidence in the record is a specific and substantial reason that undermines a claimant's credibility). Moreover, a condition that can be adequately controlled with medication and a conservative

15

treatment program cannot be the basis for a claim of disability benefits. *See, Warre v. Commissioner of Social Security*, 439 F. 3d 1001, 1006 (9th Cir. 2006) (impairments that can be controlled effectively with medication are not disabling for the purpose of considering eligibility for SSI benefits); *See also, Parra v. Astrue,* 481 F. 3d 742, 750-751 (9th Cit. 2007) (conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment.) In this case, Plaintiff's failure to provide evidence of ongoing treatment by his physician and his improvement after being treated for dehydration in the emergency room undermined his statements that he was unable to work because of his condition.

Third, the ALJ's reliance on the fact that Plaintiff continued to smoke marijuana despite his condition was proper. Plaintiff claims that the ALJ was biased because Plaintiff attempted to alleviate his pain by the using medical marijuana. However, Plaintiff misconstrues the ALJ's comments about his marijuana use. The ALJ did not make any derogatory connotation regarding Plaintiff's use of marijuana. Instead, one of the reasons the ALJ denied Plaintiff's disability application was due to the fact that "he continues to smoke marijuana despite his gastritis and GERD." AR 14. This statement was supported by the medical expert's opinion at the hearing indicating that Plaintiff's condition may be exacerbated by his marijuana use. AR 369-370. Furthermore, there is no evidence in the record that Plaintiff was prescribed medical marijuana by a doctor. To the contrary, physicians at the emergency room also noted Plaintiff's marijuana use/abuse on several occasions and recommended that Plaintiff seek counseling to address this issue. AR 137; 254; 285; 296; 312; 322. Therefore, there is no support that the ALJ improperly assessed this aspect of Plaintiff's testimony. *See, Fair v. Bowen*, 885 F. 2d 597, 603 (1989) (failure to follow a prescribed course of treatment is a legitimate basis to rebut pain testimony).

Finally, the Court is sympathetic to Plaintiff condition and it appears that additional treatment may be warranted. However, it is not the role of the Court to redetermine Plaintiff's credibility *de novo.* Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005).

### C. Medication Side Effects

In support of his argument that the ALJ improperly discredited his testimony, Plaintiff also argues that the ALJ did not discuss the side effects of his medications. Defendant has not addressed this issue.

There are two different approaches in the Ninth Circuit regarding an ALJ's duty to consider medication side effects. The first approach requires that an ALJ consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medications. *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993) (citing *Varney v. Secretary of HHS*, 846 F.2d 581, 585 (9th Cir. 1987) (superseded by statute on other grounds). Under Varney, an ALJ may not reject a claimant's testimony as to subjective limitations of side effects without making specific findings similar to those required for excess pain testimony. *Varney*, 846 F.2d at 585.

The second line of cases has distinguished Varney and has held that in order for an ALJ's failure to discuss medication side effects to be in error, the side effects must be a contributing factor in a claimant's inability to work. *See*, *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001), (no error in a question to a vocational expert that did not include information about side effects because "[t]here were passing mentions of the side effects of Mr. Osenbrock's medication in some of the medical records, but there was no evidence of side effects severe enough to interfere with Osenbrock's ability to work."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005), (failure to expressly address medication side effects is not error where there was no record support for side effects); *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985) (claimant had the burden of producing evidence that his use of prescription narcotics impaired his ability to work).

In this case, the ALJ did not expressly address the side effects of Plaintiff's medications. However, there was no error given the lack of objective medical support for Plaintiff's impairment in the record, that fact that no doctor indicated that he was disabled, as well as the ALJ's adverse credibility determination. Here, Plaintiff did not establish that the side effects of his medications prevented him from working and the ALJ made an accommodation to his RFC by limiting Plaintiff to sedentary work. AR 13.

### D.   *Reliance on the VE Testimony at Step Five*

Plaintiff contends that the VE's testimony was contradictory and does not constitute substantial evidence to support a denial of benefits. In particular, Plaintiff's argues that the hypotheticals posed to the VE were fundamentally flawed because they did not consider his anxiety condition. Defendant argues that Plaintiff's objection is without merit because the VE considered all of the limitations the ALJ found to be supported by substantial evidence.

At step five of the sequential evaluation process, an ALJ can meet the Commissioner's burden of showing that a claimant can perform other work as long as the VE testifies in response to a question setting forth all of the claimant's limitations. *See Mathews v. Shalala*, 10 F. 3d 678, 681 (9th Cir. 1993) (holding that a hypothetical question to a vocational expert must reflect all the claimant's limitations for the vocational expert testimony to be used). Here, the ALJ posed a hypothetical that restricted Plaintiff to sedentary work except that Plaintiff would need to change positions every ninety minutes. AR 372. The VE indicated that Plaintiff could work as a lens inserter, a final assembler, a table worker, and a charge account clerk. The VE also indicated that these jobs existed in the national economy in sufficient numbers. The Court finds that this is sufficient as the adopted hypothetical included limitations that were based on substantial evidence.

The Court rejects Plaintiff's argument that the ALJ erred because she did not accept the hypothetical posed to the VE that outlined *all* of the Plaintiff's *alleged* limitations. (emphasis added). After evaluating the record, the ALJ considered all of the hypotheticals and relied on the one she determined most accurately represented Plaintiff's true limitations given the evidence. Plaintiff's assertion that the ALJ failed to consider his anxiety condition is unfounded as Plaintiff did not produce any evidence that his anxiety precluded his ability to work. Therefore, the ALJ properly relied on the VE's testimony that Plaintiff could perform other work and that Plaintiff is not disabled at step five. *See*, C.F.R. §§ 416.920(a)(4)(v)(a claimant who can make an adjustment to other work is not disabled).

### E.   *Lay Witness Testimony*

Plaintiff argues that the ALJ erroneously prohibited Plaintiff's mother from testifying regrading his activities of daily living and the side effects of his medications.  However, a review of the transcript indicates that Plaintiff's representative at the time did not clearly articulate the basis of the mother's testimony, and conceded that there was no more information the mother could add.  AR 378-379.  The representative agreed with the ALJ that the testimony would not be helpful.  Therefore, Plaintiff waived the opportunity to have his mother testify and cannot now argue that the ALJ's decision was improper.  Additionally, Plaintiff has failed make any offer of proof of the mother's testimony that would establish that her testimony would have changed the outcome of the hearing given the lack of medical evidence in support of Plaintiff's disability application.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Michael J. Alvarez.

IT IS SO ORDERED.

Dated:     **September 29, 2010**              /s/ **Gary S. Austin**
                                                                    UNITED STATES MAGISTRATE JUDGE